# ELFBRANDT *v.* RUSSELL ET AL.

No. 656. Argued February 24, 1966.—Decided April 18, 1966.

12

*W. Edward Morgan* argued the cause and filed a brief for petitioner.

*Philip M. Haggerty,* Special Counsel to the Attorney General of Arizona, argued the cause for respondents. With him on the brief was *Darrell F. Smith,* Attorney General.

MR. JUSTICE DOUGLAS delivered the opinion of the Court.

This case, which involves questions concerning the constitutionality of an Arizona Act requiring an oath from state employees, has been here before. We vacated the judgment of the Arizona Supreme Court which had sustained the oath (94 Ariz. 1, 381 P. 2d 554) and remanded the cause for reconsideration in light of *Baggett* v. *Bullitt,* 377 U. S. 360. See 378 U. S. 127. On reconsideration the Supreme Court of Arizona reinstated the original judgment. 97 Ariz. 140, 397 P. 2d 944. The case is here on certiorari. 382 U. S. 810.

The oath reads in conventional fashion as follows: [1]

> "I, (type or print name) do solemnly swear (or affirm) that I will support the Constitution of the United States and the Constitution and laws of the State of Arizona; that I will bear true faith and allegiance to the same, and defend them against all enemies, foreign and domestic, and that I will faithfully and impartially discharge the duties of the office of (name of office) according to the best of my ability, so help me God (or so I do affirm)."

---

[1] Ariz. Rev. Stat. § 38–231 (1965 Supp.).

The Legislature put a gloss on the oath [2] by subjecting to a prosecution for perjury and for discharge from public office anyone who took the oath and who "knowingly and wilfully becomes or remains a member of the communist party of the United States or its successors or any of its subordinate organizations" or "any other organization" having for "one of its purposes" the overthrow of the government of Arizona or any of its political subdivisions where the employee had knowledge of the unlawful purpose. Petitioner, a teacher and a Quaker, decided she could not in good conscience take the oath, not knowing what it meant and not having any chance to get a hearing at which its precise scope and meaning could be determined. This suit for declaratory relief followed. On our remand the Arizona Supreme Court

---

[2] *Id.*, § E reads as follows:

"Any officer or employee as defined in this section having taken the form of oath or affirmation prescribed by this section, and knowingly or wilfully at the time of subscribing the oath or affirmation, or at any time thereafter during his term of office or employment, does commit or aid in the commission of any act to overthrow by force or violence the government of this state or of any of its political subdivisions, or advocates the overthrow by force or violence of the government of this state or of any of its political subdivisions, or during such term of office or employment knowingly and wilfully becomes or remains a member of the communist party of the United States or its successors or any of its subordinate organizations or any other organization having for one of its purposes the overthrow by force or violence of the government of the state of Arizona or any of its political subdivisions, and said officer or employee as defined in this section prior to becoming or remaining a member of such organization or organizations had knowledge of said unlawful purpose of said organization or organizations, shall be guilty of a felony and upon conviction thereof shall be subject to all the penalties for perjury; in addition, upon conviction under this section, the officer or employee shall be deemed discharged from said office or employment and shall not be entitled to any additional compensation or any other emoluments or benefits which may have been incident or appurtenant to said office or employment."

said that the gloss on the oath is "not afflicted" with the many uncertainties found potentially punishable in *Baggett* v. *Bullitt, supra.*

> "Nor does it reach endorsements or support for Communist candidates for office nor a lawyer who represents the Communist Party, or its members, nor journalists who defend the Communist Party, its rights, or its members. Such conduct is neither an act nor in aid of an act attempting to overthrow the government by force and violence.

> "It is our conclusion that the portions of the Arizona act here considered do not forbid or require conduct in terms so vague that men of common intelligence must necessarily guess at the meaning and differ as to their application." 97 Ariz., at 147, 397 P. 2d, at 948.

Mr. Justice Bernstein, in dissent, responded that the majority had failed to consider the so-called "membership clause" of the oath and accompanying statutory gloss:

> "Let us consider a scientist, a teacher in one of our universities. He could not know whether membership is prohibited in an international scientific organization which includes members from neutralist nations and Communist bloc nations—the latter admittedly dedicated to the overthrow of our government and which control the organization—even though access to the scientific information of the organization is available only to its members.

> . . . . .

> "Though all might agree that the principal purpose of such an organization is scientific, the statute makes his membership a crime if any subordinate

purpose is the overthrow of the state government. The vice of vagueness here is that the scientist cannot know whether membership in the organization will result in prosecution for a violation of § 38–231, subd. E or in honors from his university for the encyclopedic knowledge acquired in his field in part through his membership." *Id.,* at 147–148, 397 P. 2d, at 949.

We recognized in *Scales* v. *United States,* 367 U. S. 203, 229, that "quasi-political parties or other groups . . . may embrace both legal and illegal aims." We noted that a "blanket prohibition of association with a group having both legal and illegal aims" would pose "a real danger that legitimate political expression or association would be impaired." The statute with which we dealt in *Scales,* the so-called "membership clause" of the Smith Act (18 U. S. C. § 2385), was found not to suffer from this constitutional infirmity because, as the Court construed it, the statute reached only "active" membership (*id.,* at 222) with the "specific intent" of assisting in achieving the unlawful ends of the organization (*id.,* at 229–230). The importance of this limiting construction from a constitutional standpoint was emphasized in *Noto* v. *United States,* 367 U. S. 290, 299–300, decided the same day:

"[I]t should also be said that this element of the membership crime [the defendant's 'personal criminal purpose to bring about the overthrow of the Government by force and violence'], like its others, must be judged *strictissimi juris,* for otherwise there is a danger that one in sympathy with the legitimate aims of such an organization, but not specifically intending to accomplish them by resort to violence, might be punished for his adherence to lawful and

constitutionally protected purposes, because of other and unprotected purposes which he does not necessarily share." [3]

Any lingering doubt that proscription of mere knowing membership, without any showing of "specific intent," would run afoul of the Constitution was set at rest by our decision in *Aptheker* v. *Secretary of State*, 378 U. S. 500. We dealt there with a statute which provided that no member of a Communist organization ordered by the Subversive Activities Control Board to register shall apply for or use a passport. We concluded that the statute would not permit a narrow reading of the sort we gave § 2385 in *Scales*. See 378 U. S., at 511, n. 9. The statute, as we read it, covered membership which was not accompanied by a specific intent to further the unlawful aims of the organization, and we held it unconstitutional.

The oath and accompanying statutory gloss challenged here suffer from an identical constitutional infirmity. One who subscribes to this Arizona oath and who is, or thereafter becomes, a knowing member of an organization which has as "one of its purposes" the violent overthrow of the government, is subject to immediate discharge and criminal penalties. Nothing in the oath, the statutory gloss, or the construction of the oath and statutes given by the Arizona Supreme Court, purports to exclude association by one who does not subscribe to the organization's unlawful ends. Here as in *Baggett* v. *Bullitt, supra,* the "hazard of being prosecuted for knowing but guiltless behavior" (*id.,* at 373) is a reality. People often label as "communist" ideas which they oppose; and they often make up our juries. "[P]rosecutors too are human." *Cramp* v. *Board of Public Instruction,* 368 U. S. 278, 287. Would a teacher be safe and secure

---

[3] Cf. *Rowoldt* v. *Perfetto,* 355 U. S. 115, 120; *Gastelum-Quinones* v. *Kennedy,* 374 U. S. 469.

in going to a Pugwash Conference? [4] Would it be legal to join a seminar group predominantly Communist and therefore subject to control by those who are said to believe in the overthrow of the Government by force and violence? Juries might convict though the teacher did not subscribe to the wrongful aims of the organization. And there is apparently no machinery provided for getting clearance in advance. [5]

Those who join an organization but do not share its unlawful purposes and who do not participate in its unlawful activities surely pose no threat, either as citizens or as public employees. Laws such as this which are not restricted in scope to those who join with the "specific intent" to further illegal action impose, in effect, a conclusive presumption that the member shares the unlawful aims of the organization. See *Aptheker* v. *Secretary of State, supra,* at 511. The unconstitutionality of this Act follows *a fortiori* from *Speiser* v. *Randall,* 357 U. S. 513, where we held that a State may not even place on

---

[4] The Pugwash Conferences, A Staff Analysis, Subcommittee to Investigate the Administration of the Internal Security Act, Senate Committee on the Judiciary, Committee Print, 87th Cong., 1st Sess. (1961); Rabinowitch, Pugwash—History and Outlook, 13 Bull. Atomic Sci. 243 (1957); Topchiev, Comments on Pugwash: From the East, 14 Bull. Atomic Sci. 118 (1958); Thirring, Comments on Pugwash: From the West, *id.,* at 121; Rabinowitch, The Stowe Conferences, 17 Bull. Atomic Sci. 382 (1961); Statement of International Pugwash Continuing Committee: Pugwash XIII, Bull. Atomic Sci. 43–45 (December 1964); Documents of Second Pugwash Conference of Nuclear Scientists (March 31–April 11, 1958).

[5] Petitioner would, of course, have a hearing at a perjury trial, after the event. And one member of the Arizona Supreme Court felt that petitioner, having tenure, would be entitled to a hearing before she was discharged from her teaching position. See *Elfbrandt* v. *Russell,* 94 Ariz. 1, 17–18, 381 P. 2d 554, 565 (Bernstein, C. J., concurring). But even that is not authoritatively decided by the court; indeed, another opinion states this to be a minority view, 94 Ariz., at 18, 381 P. 2d, at 566 (separate opinion of Jennings, J.).

an applicant for a tax exemption the burden of proving that he has not engaged in criminal advocacy.

This Act threatens the cherished freedom of association protected by the First Amendment, made applicable to the States through the Fourteenth Amendment. *Baggett* v. *Bullitt, supra; Cramp* v. *Board of Public Instruction, supra.* Cf. *N. A. A. C. P.* v. *Alabama,* 357 U. S. 449, 460 *et seq.; Gibson* v. *Florida Legislative Committee,* 372 U. S. 539, 543–546. And, as a committee of the Arizona Legislature which urged adoption of this law itself recognized, public employees of character and integrity may well forgo their calling rather than risk prosecution for perjury or compromise their commitment to intellectual and political freedom:

> "The communist trained in fraud and perjury has no qualms in taking any oath; the loyal citizen, conscious of history's oppressions, may well wonder whether the medieval rack and torture wheel are next for the one who declines to take an involved negative oath as evidence that he is a True Believer." [6]

A statute touching those protected rights must be "narrowly drawn to define and punish specific conduct as constituting a clear and present danger to a substantial interest of the State." *Cantwell* v. *Connecticut,* 310 U. S. 296, 311. Legitimate legislative goals "cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved." *Shelton* v. *Tucker,* 364 U. S. 479, 488. And see *Louisiana* v. *N. A. A. C. P.,* 366 U. S. 293, 296–297.

---

[6] Report of the Judiciary Committee in Support of the Committee Amendment to H. B. 115, Journal of the Senate, 1st Reg. Sess., 25th Legislature of the State of Arizona, p. 424 (1961).

As we said in *N. A. A. C. P.* v. *Button,* 371 U. S. 415, 432–433:

> "The objectionable quality of . . . overbreadth does not depend upon absence of fair notice to a criminally accused or upon unchanneled delegation of legislative powers, but upon the danger of tolerating, in the area of First Amendment freedoms, the existence of a penal statute susceptible of sweeping and improper application. . . . These freedoms are delicate and vulnerable, as well as supremely precious in our society. The threat of sanctions may deter their exercise almost as potently as the actual application of sanctions. . . ."

A law which applies to membership without the "specific intent" to further the illegal aims of the organization infringes unnecessarily on protected freedoms. It rests on the doctrine of "guilt by association" which has no place here. See *Schneiderman* v. *United States,* 320 U. S. 118, 136; *Schware* v. *Board of Bar Examiners,* 353 U. S. 232, 246. Such a law cannot stand.

*Reversed.*

Mr. Justice White, with whom Mr. Justice Clark, Mr. Justice Harlan and Mr. Justice Stewart concur, dissenting.

According to unequivocal prior holdings of this Court, a State is entitled to condition public employment upon its employees abstaining from knowing membership in the Communist Party and other organizations advocating the violent overthrow of the government which employs them; the State is constitutionally authorized to inquire into such affiliations and it may discharge those who refuse to affirm or deny them. *Gerende* v. *Board of Supervisors of Elections,* 341 U. S. 56; *Garner* v. *Board*

*of Public Works,* 341 U. S. 716; *Adler* v. *Board of Education,* 342 U. S. 485; *Beilan* v. *Board of Education,* 357 U. S. 399; *Lerner* v. *Casey,* 357 U. S. 468; *Nelson* v. *County of Los Angeles,* 362 U. S. 1; see also *Wieman* v. *Updegraff,* 344 U. S. 183; *Slochower* v. *Board of Education,* 350 U. S. 551. The Court does not mention or purport to overrule these cases; nor does it expressly hold that a State must retain, even in its most sensitive positions, those who lend such support as knowing membership entails to those organizations, such as the Communist Party, whose purposes include the violent destruction of democratic government.

Under existing constitutional law, then, Arizona is free to require its teachers to refrain from knowing membership in the designated organizations and to bar from employment all knowing members as well as those who refuse to establish their qualifications to teach by executing the oath prescribed by the statute. Arizona need not retain those employees on the governor's staff, in the Phoenix police department or in its schools who insist on holding membership in and lending their name and influence to those organizations aiming at violent overthrow. *Adler* v. *Board of Education,* 342 U. S. 485.

It would seem, therefore, that the Court's judgment is aimed at the criminal provisions of the Arizona law which expose an employee to a perjury prosecution if he swears falsely about membership when he signs the oath or if he later becomes a knowing member while remaining in public employment. But the State is entitled to condition employment on the absence of knowing membership; and if an employee obtains employment by falsifying his present qualifications, there is no sound constitutional reason for denying the State the power to treat such false swearing as perjury. *Alire* v. *United States,* 313 F. 2d 31; *Ogden* v. *United States,* 303 F. 2d

724.[1] By the same token, since knowing membership in specified organizations is a valid disqualification, Arizona cannot sensibly be forbidden to make it a crime for a person, while a state employee, to join an organization knowing of its dedication to the forceful overthrow of his employer and knowing that membership disqualifies him for state employment. The crime provided by the Arizona law is not just the act of becoming a member of an organization but it is that membership plus concurrent public employment. If a State may disqualify for knowing membership and impose criminal penalties for falsifying employment applications, it is likewise within its powers to move criminally against the employee who knowingly engages in disqualifying acts during his employment. If a government may remove from office, 5 U. S. C. § 118i (1964 ed.), *United Public Workers of America* v. *Mitchell,* 330 U. S. 75, and criminally punish, 18 U. S. C. § 607 (1964 ed.), its employees who engage in certain political activities, it is unsound to hold that it may not, on pain of criminal penalties, prevent its employees from affiliating with the Communist Party or other organizations prepared to employ violent means to overthrow constitutional government. Our Constitution does not require this kind of protection for the secret proselyting of government employees into the Communist Party, an organization which has been found to be controlled by a foreign power and to be dedicated to the overthrow of the government by any illegal means necessary to achieve this end.

---

[1] These cases uphold the constitutionality of 18 U. S. C. § 1001 (1964), which makes it a crime to make false statements with regard to any matter within the jurisdiction of any department or agency of the United States. Many States have comparable statutes, *e. g.,* Cal. Govt. Code §§ 1368, 3108; Mass. Gen. Laws Ann., c. 264, §§ 14, 15; Okla. Stat. Ann., Tit. 51, §§ 36.5, 36.6.

*Communist Party of the United States* v. *Subversive Activities Control Board,* 367 U. S. 1.[2]

There is nothing in *Scales* v. *United States,* 367 U. S. 203, *Noto* v. *United States,* 367 U. S. 290, or *Aptheker* v. *Secretary of State,* 378 U. S. 500, dictating the result reached by the Court. *Scales* involved the construction of the Smith Act and a holding that the membership clause did not reach members who knew of the illegal aims of the Party but lacked an active membership and an intent to further the illegal ends. *Noto* also involved a construction of the Smith Act, the conviction there being reversed for insufficient evidence. *Aptheker* struck down a provision denying passports to members of the Communist Party which applied "whether or not one knows or believes that he is associated with an organization operating to further aims of the world Communist movement . . . . The provision therefore sweeps within its prohibition both knowing and unknowing members." 378 U. S., at 510. In any event, *Scales, Noto* and *Aptheker* did not deal with the government employee who is a knowing member of the Communist Party. They did not suggest that the State or Federal Government should be prohibited from taking elementary precautions against its employees forming knowing and deliberate affiliations with those organizations who conspire to destroy the government by violent means. *Speiser* v. *Randall,* 357 U. S. 513, also relied upon by the majority, carefully preserved *Gerende* and *Garner* for reasons which I think are equally applicable to the Arizona oath and statute. In my view, therefore, the Court errs in holding that the Act is overbroad because it includes state em-

---

[2] See the findings of Congress, Subversive Activities Control Act of 1950, 50 U. S. C. § 781 (1964 ed.), and of the Arizona Legislature, Arizona Communist Control Act of 1961, Ariz. Laws 1961, c. 108, § 2.

ployees who are knowing members but who may not be active and who may lack the specific intent to further the illegal aims of the Party.[3]

Even if Arizona may not take criminal action against its law enforcement officers or its teachers who become Communists knowing of the purposes of the Party, the Court's judgment overreaches itself in invalidating this Arizona statute. Whether or not Arizona may make knowing membership a crime, it need not retain the member as an employee and is entitled to insist that its employees disclaim, under oath, knowing membership in the designated organizations and to condition future employment upon future abstention from membership. It is, therefore, improper to invalidate the entire statute in this declaratory judgment action. If the imposition of criminal penalties under the present Act is invalid, the Court should so limit its holding and remand the case to the Arizona courts to determine the severability of the criminal provisions under the severability provisions of the Act itself. Arizona Communist Control Act of 1961, Ariz. Laws 1961, c. 108, § 8.

---

[3] On remand from this Court, 378 U. S. 127, the Arizona Supreme Court gave the oath and statute a narrow reading that eliminated their vulnerability to the charge of being unconstitutionally vague. 97 Ariz. 140, 397 P. 2d 944. See *Baggett* v. *Bullitt*, 377 U. S. 360. Although the majority on remand did not dwell on the membership clause, this, it seems to me, is because its meaning is clear from the face of the statute. By its own terms, unless the organization joined actually has as a purpose unlawful revolution and the employee actually knows of this purpose, he commits no crime. "And since the constitutional vice in a vague or indefinite statute is the injustice to the accused in placing him on trial for an offense, the nature of which he is given no fair warning, the fact that punishment is restricted to acts done with knowledge that they contravene the statute makes this objection untenable." *American Communications Assn.* v. *Douds,* 339 U. S. 382, 413.