97 N.J. Super. 62 (1967)
234 A.2d 408
APPLICATION OF WALTER MARVIN, JR., APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued May 1, 1967.
Decided September 29, 1967.
*65 Before Judges SULLIVAN, KOLOVSKY and CARTON.
Mr. Michael D. Schottland argued the cause for appellant.
Mr. John W. Hayden, Jr., Deputy Attorney General, argued the cause for respondent (Mr. Arthur J. Sills, Attorney General of New Jersey, attorney).
The opinion of the court was delivered by CARTON, J.A.D.
Applicant Walter Marvin, Jr. seeks to review the County Court's denial of his application for a firearms purchaser identification card. The chief of police of Middletown Township denied the application because applicant failed to answer certain questions on the form provided as to his membership in subversive organizations or *66 those which seek to deprive others of their constitutional rights. N.J.S. 2A:151-35.
After a prompt hearing held before the Monmouth County Court in the manner provided for review in the statute, the trial judge upheld the action of the police chief and rejected the claims of the applicant that the First Amendment to the United States Constitution forbids the statutorily directed inquiry and that the statute is void for vagueness.
The application form promulgated by the Superintendent of State Police, pursuant to statutory direction, contains three questions to which the applicant objects:
"No. 22. Are you presently or have you ever been a member of any organization which advocates or approves the commission of acts of force or violence, either to overthrow the government of the United States or of this State, or which seeks to deny others of their rights under the Constitution of either the United States or the State of New Jersey? Yes or No.
No. 23. If yes to the above question, what is the name of the organization?
No. 24. Date of Membership."
These questions follow others inquiring as to whether the applicant is a former criminal, alcoholic, habitual drunkard or narcotics addict, and are made pursuant to N.J.S. 2A:151-35 which, in pertinent part, requires the applicant to answer:
"* * * whether he presently or ever has been a member of any organization, which advocates or approves the commission of acts of force and violence either to overthrow the Government of the United States or of this State, or which seeks to deny others their rights under the Constitutions of either the United States or the State of New Jersey, * * *."
We note, in passing, an inadvertent substitution of the word "or" for the word "and" in the statutory phrase, "force and violence"; the use of "or" in the conjunctive is commonplace in the law.
*67 It should also be noted that N.J.S. 2A:151-44.2, although not directly challenged in this action, requires in parallel language that similar questions be included on applications for permits to carry a pistol or revolver. If the applicant provides false information in applying for any of these he may then be found guilty of a high misdemeanor. N.J.S. 2A:151-48.
Applicant claims that he is an active gun enthusiast, that he lectures on firearms and that, as owner of some 50 rifles and shotguns, he needs the identification card in order to transport these guns to various lectures and related activities. Contrary to the contention of the State of New Jersey, these circumstances surely invest him with standing to complain. The contention that applicant's motion for a hearing and his subsequent appeal are premature is also without merit.
Basically, applicant here claims that his refusal to provide information as to his membership in certain groups is not such a relevant consideration that it would alone justify denial of the card and put him to the choice either of answering and thus revealing his associational interests or accepting the continued denial of the permit. The procedure chosen by the applicant has squarely raised this issue.
Two companion cases in the United States Supreme Court have dealt with a similar question  whether a candidate for admission to the Bar could be constitutionally denied admission upon his refusal to answer any questions as to his membership in the Communist Party or other listed organizations. Both resolved this conflict of State and private interests in favor of the State's need to obtain an answer to an inquiry relevant to the applicant's qualifications. Konigsberg v. State Bar of California, 366 U.S. 36, 81 S.Ct. 997, 6 L.Ed.2d 105 (1961); In re Anastaplo, 366 U.S. 82, 81 S.Ct. 978, 6 L.Ed.2d 135 (1961). See also Garner v. Board of Public Works of City of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951) (refusal to take oath of nonmembership).
*68 To answer the plaint of the applicant by emphasizing that he could still obtain the card by simply answering the question is to misconstrue the manner in which he considers himself aggrieved. The question is whether it is permissible for the State to ask  not whether it may deny upon receiving an affirmative answer.
The applicant also has standing to complain that the statute is void for vagueness under the First Amendment. The dilemma within which the asserted vagueness places the applicant invests him with standing; he may either refuse to answer and suffer a proper denial of issuance or answer and run the risk of a criminal proceeding for providing false information. Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961). This despite the fact that in any such criminal proceeding any vice of overbreadth to which the statute is subject, and of which he was unaware, would negative scienter on his part.
Whether the associational interests indicated by the statute bear a reasonable relationship to the obligation of the State to ensure that only qualified individuals receive identification cards for firearms, and whether the inquiry is so peculiarly responsive to the evil which the statute was designed to reach that it justifies the restrictions placed on the individual's associational privacy, must now be determined.
The danger to law and order represented by armed, organized groups far exceeds that posed by any individual. These organizations can quickly magnify the destructive potential of individual, armed members and form bands capable of both confronting and challenging the authority of the local police. Such groups may provoke riots and other forms of domestic unrest whose intensity and duration will be directly related to the armed power possessed by the group. They also may by their presence deter others from protesting peaceably and eventually encourage these nonviolent organizations to take up arms in response to their activities.
The State may not safely ignore such threats. Nor does the Constitution require the State to remain helpless when *69 timely safeguards are deemed necessary to assure the maintenance of law and order and to guarantee others the continuing exercise of their civil rights.
Justice Frankfurter also gave expression to this thought:
"The Constitution of the United States does not render the United States or the States impotent to guard their governments against destruction by enemies from within. It does not preclude measures of self-protection against anticipated overt acts of violence. Solid threats to our kind of government  manifestations of purposes that reject argument and the free ballot as the means for bringing about changes and promoting progress  may be met by preventive measures before such threats reach fruition. * * *" Wieman v. Updegraff, 344 U.S. 183, 195, 73 S.Ct. 215, 221, 97 L.Ed. 216, 224 (1952) (concurring).
In this case the inquiry made is directly relevant to the governmental interest in the "public health, safety or welfare" (N.J.S. 2A:151-33) and may indeed be necessary to insure the preservation of our democratic processes.
Similar inquiries have been considered justifiable when the nonrespondent sought to obtain a position of power or trust, or when the misuse of that power could seriously dislocate the social system. See Garner v. Board of Public Works, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951) (municipal employees); American Communications Association v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950) (power of union official to call a political strike). Here the applicant seeks not a position of power but an instrument of power; the dangerous potential possessed by organized, armed groups may far exceed any power conferred by position and certainly justifies inquiry by the State. By comparison, members of those organizations known to engage in only peaceful protest would not be required to disclose membership and the applicant could answer the inquiry as to membership (No. 22) in the negative. Cf. Gibson v. Florida Legislative Investigation Committee, 372 U.S. 539, 83 S.Ct. 889, 9 L.Ed.2d 929 (1963).
Parallel concerns are involved in those cases which justify inquiry as to membership in a group whose conduct the state *70 has a right to prohibit, and those cases which uphold the validity of a statute when challenged for overbreadth in its prohibition of group activity. In both instances the justificatory and dispositive circumstance may be found in the potentiality for violence of one group not possessed by the other. This distinction was aptly delineated by Justice Goldberg in Cox v. State of Louisiana, 379 U.S. 536, 574, 85 S.Ct. 453, 485, 13 L.Ed.2d 471 (1965):
"We reaffirm the repeated holdings of this Court that our constitutional command of free speech and assembly is basic and fundamental and encompasses peaceful social protest, so important to the preservation of the freedoms treasured in a democratic society. We also reaffirm the repeated decisions of this Court that there is no place for violence in a democratic society dedicated to liberty under law. * * *" (85 S.Ct., at p. 485, 13 L.Ed.2d, at p. 498)
The required information is reasonably calculated to furnish the officer with pertinent information to enable him to investigate further before deciding whether the identification card should issue to the applicant. Failure to answer thus provides a sufficient reason for denial.
The applicant next contends that, if he answers, he will be subject to a potential penalty for his lack of knowledge of the purpose and objectives of any organization to which he may belong. This is one aspect of his claim that the statute is void for vagueness. N.J.S. 2A:151-48 provides:
"Any person who gives or causes to be given any false information, or signs a fictitious name or address, in applying for a firearms purchaser identification card or a permit to purchase or a permit to carry a pistol, revolver, or other firearm, or in completing the certificate or any other instrument required by this act in purchasing or otherwise acquiring delivery of any rifle, shotgun, pistol, revolver or other firearm is guilty of a high misdemeanor." (As amended L. 1966, c. 60, § 39)
Scienter must still be established, for the statute requires it to be shown that the accused knew of the purpose of the organization at the time he answered the questions. Cf. *71 Garner v. Board of Public Works, supra, 341 U.S., at p. 724, 71 S.Ct., at p. 914, 95 L.Ed., at pp. 1324-1325. Possession while committing or attempting to commit a crime is prima facie evidence of the intention to commit the crime with the firearm, N.J.S. 2A:151-6; the presence of a firearm in a vehicle is presumptive evidence of possession by all persons in the vehicle, N.J.S. 2A:151-7. In this case the application for an identification card has not been considered such a persuasive circumstance by the Legislature that it has chosen to make explicit by statute any change in the normal burden of proof placed on the prosecution.
In recent cases involving oaths administered to state employees the court has declared invalid statutes which apply to membership without the "specific intent" to further the illegal aims of the organization. Keyishian v. Board of Regents of the University of the State of New York, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966). Both cases dealt with the academic freedom of teachers, an area which the Court considered to be "a special concern" of the First Amendment. Keyishian, 87 S.Ct., at p. 683, 17 L.Ed.2d, at p. 640. In the present case the legitimate concern of the State is not outweighed by any countervailing interest in obtaining employment or in the free dissemination of ideas.
One possible result of the procedure required by this statute is the discovery of a pattern of purchasing by members of certain organizations. Contrary to the suggestion made by the applicant, the disclosure of membership will not necessarily lead to denial. It may do so where issuance would not be in the interest of public safety and welfare.
Applicant's attack is also against the use of the word "approves," which he considers to be significantly more inclusive than the word "advocates." While "approves" may have many meanings, it achieves contextual specificity when it is included in a phrase whose obvious subject matter is the willingness of an organization to use force and violence *72 and when it is used in tandem with the word "advocates," with which under the particular circumstances it becomes substantially synonymous. See State v. Smith, 46 N.J. 510, 518 (1966), certiorari denied 385 U.S. 838, 87 S.Ct. 85, 17 L.Ed.2d 71 (1966); City of Springfield v. Commonwealth, 349 Mass. 267, 207 N.E.2d 891, 894 (Sup. Jud. Ct. 1965). In dealing with the verbal context of words of general import our Supreme Court has noted that "particular words may be enlarged or restricted in meaning by their associates and the evident spirit of the whole expression." Salz v. State House Commission, 18 N.J. 106, 111, 112 A.2d 716, 719 (1955).
The situational and verbal contexts leave no doubt as to the meaning of this word. Several circumstances erase any notion that it was directed to the mere advocacy of ideas. The question is asked on a form dealing solely with the acquisition of instruments of violence; the question is directed to an actual member of an organization approving such acts, and the question pairs together the concepts of advocacy and approval. The context unambiguously informs the applicant that here approval is tantamount to advocacy of the commission of acts of violence and that it goes beyond mere attraction to certain abstract concepts.
The applicant also claims that the second phrase dealing with organizations which seek to deny others their civil rights is void for vagueness. The whole clause now challenged is:
"* * * whether he presently or ever has been a member of any organization, which advocates or approves the commission of acts of force and violence either to overthrow the Government of the United States or of this State, or which seeks to deny others their rights under the Constitutions of either the United States or the State of New Jersey, * * *."
The phrase following "either to overthrow" lacks on first inspection that parallelism of expression which could easily be restored by striking the words, "which seeks." The juxtaposition of the denial clause with that dealing with subversive *73 activities, the obvious attempt to use parallel language and the subject matter involved, firearms, all clearly indicate that the Legislature intended to include only those groups that go beyond peaceable protest.
It is a recognized principle of statutory construction that the court may delete words or phrases when it is necessary to carry out the legislative intent and it is apparent that the words were erroneously inserted. 2 Sutherland, Statutory Construction (3d ed. 1943) § 4926.
The statute on its face contains a readily discernible grammatical error; the choice here is only between the elimination of the word "either" or the striking of "which seeks." Since the legislative intention can be ascertained with reasonable certainty, the latter alternative should be chosen to effectuate that intent and to avoid any inconsistency therewith. Cf. Robson v. Rodriguez, 26 N.J. 517, 528 (1958).
The comma following "this State" also seems to suggest that this whole latter clause modifies "organization" alone and that it does not include any restriction that the organization be one advocating or approving the use of force. The use of the word "either" to introduce two coordinate phrases negatives such an interpretation. Moreover, in the context of an application for the use of an instrument of force or violence, the very situation compels the conclusion that the commission of such acts is a referent common to both. When, as here, the dominant statutory purpose is clear, the court may disregard punctuation or even repunctuate in its search for the legislative intention. See Weinacht v. Board of Chosen Freeholders of Bergen County, 3 N.J. 330, 333-334 (1949).
This interpretation is consistent with both the clear legislative intent and the demarcation line previously found in decisions of the United States Supreme Court; the distinction made is between those organizations believing in peaceable protest and those willing to use force. The applicant should encounter no difficulty in determining whether any organization to which he belongs advocates or approves of *74 the use of violence, an egregious characteristic to say the least. See, however, Comment, "Firearms: Problems of Control," 80 Harv. L. Rev. 1328 (1967), in which this section of the New Jersey statute is specifically considered and the ability to identify these organizations questioned.
Finally, the applicant attacks the entire question propounded as being void for vagueness. In drafting such statutes legislatures must avoid the vice both of under-inclusiveness and over-inclusiveness. The first is usually committed by designating an organization by name, which results in the statute's being declared a bill of attainder; the second occurs when the statute is declared void for vagueness, or as a bill of attainder which overlooks the scienter of members of a named organization. Compare United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), with Cramp v. Board of Public Instruction, 368 U.S. 278, 82 S.Ct. 275, 7 L.Ed.2d 285 (1961).
Viewing the question as a whole, it would appear that the Legislature has steered a course avoiding both of these objections. Even in Cramp the court recognized that the phrase, "advocacy of violent overthrow of state or federal government," included terms capable of objective measurement. 368 U.S., at p. 286, 82 S.Ct., at p. 280, 7 L.Ed.2d, at p. 291. The organizations in the statute have been described by both purpose and means. To go further and designate them by name would incur valid objections to the statute as a bill of attainder. And in this case the specific means which concerned the Legislature are all too obvious from the very purpose of the application.
One practical consideration remains. At the oral argument counsel raised the question whether an applicant for an identification card could properly be burdened with the obligation of being aware of the interpretation placed upon the statute by the court. The point raised was that the application form should be self-contained and sufficiently unambiguous so as not to require reference to any other document. Since this is an administrative problem, it can readily *75 be solved by an appropriate modification in the application form in accordance with this decision.
Affirmed.