Loyalty Oath — Overbreadth — Unconstitutional The Oklahoma Loyalty Oath, 51 O.S. 36.2 [51-36.2] (1961) is unconstitutional. The Attorney General has considered your request of February 28, 1968. We are asked to pass upon the constitutionality of the Oklahoma Loyalty Oath found in 51 O.S. 36.2 [51-36.2] (1961), in light of the First andFourteenth Amendments of the Constitution of the United States. The Oath, which is a condition precedent to employment with the State of Oklahoma, provides: "I,, do solemnly swear (or affirm) that, consistent with my citizenship, I will support, obey and defend the Constitution of the United States and the Constitution of the State of Oklahoma, will not violate any of the provisions thereof, and will discharge the duties of my office or employment with fidelity. "I do further swear (or affirm) that I do not advocate by the medium of teaching, or justify, directly or indirectly, and am not a member of or affiliated with the Communist Party or the or with any party or organization, political or otherwise, known to me to advocate by the medium of teaching, or justify, directly or indirectly, revolution, sedition, treason or a program of sabotage, or the overthrow of the government of the United States or of the State of Oklahoma or a change in the form of government thereof by force, violence or other unlawful means. "I do further swear (or affirm) that I will take up arms or render noncombatant service in the defense of the United States in time of war or national emergency, that is, if by valid law required. "I do further swear (or affirm) that during such time as I am will not advocate by the medium of teaching, or justify, directly or indirectly, and will not become a member of or affiliated with the Communist Party or the Cominform, or with any party or organization, political or otherwise known to me to advocate through the medium of teaching, or justify, directly or indirectly, revolution, sedition, treason or a program of sabotage, or the overthrow of the government of the United States or of the State of Oklahoma or a change in the form of government thereof by force, violence or other unlawful means." Since 1952 the so-called "negative loyalty oath" or "Non-Communists oath" has received thorough consideration by the United States Supreme Court. No question remains, as Mr. Justice Harlan said in Whitehill v. Elkins, 389 U.S. 54, 19 L.Ed.2d 228, 234 (1967), that a majority of the court does "not like loyalty oaths." That trend began in Wieman v. Updegraff, 344 U.S. 182,73 S.Ct. 215, 97 L.Ed. 216 (1952), where the court announced the "scienter" doctrine; next came the "vagueness" doctrine of Cramp v. Board of Public instruction, 368 U.S. 278,82 S.Ct. 275, 7 L.Ed.2d 285 (1961); then followed the "guilt by association" doctrine of the Elfbrandt v. Russell, 384 U.S. 11 S.Ct. 1238, 16 L.Ed.2d 321 (1966). Finally the trend culminated in the "overbreadth" doctrine of Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675,17 L.Ed.2d 629 (1967), where the court said: ". . . legislation which sanctions membership unaccompanied by specific intent to further the unlawful goals of the organization or which is not active membership violates constitutional limitations." From 1962 to present the United States Supreme Court has declared many negative loyalty oaths unconstitutional including those of Arizona, New York and Maryland. There is a striking similarity between the oaths of the mentioned states and the Oklahoma loyalty oath. Of special interest to us is the decision of Ehrenreich v. Londerholm, 273 F. Supp. 178 (Dist.Ct. Kan.) which declared the Kansas loyalty oath unconstitutional. The Kansas oath found in K.S.A. 21-305, provides: "Every officer and employee of the state, county, city or other municipality of the state, including members of the legislature, private and public school teachers and university and college professors and instructors shall be required to sign the following oath: "I, swear (or affirm) that I do not advocate, nor am I a member of any political party or organization that advocates the overthrow of the government of the United States or of the state by force or violence; and that during such time as I am an officer or employee of the, I will not advocate nor become a member of any political party or organization that advocates the overthrow of the government of the United States or of this state by force or violence." The court concluded that measured by the yardstick of Keyishian v. Board of Regents, supra, the oath, ". . . to the extent that it proscribes mere membership in an organization advocating the overthrow by violence of the government of the United States or of the state, without any showing of specific intent to further the aims of such organization, suffers from the "overbreadth" denounced in Keyishian, and is therefore unconstitutional." Applying the principles announced in the decisions of the United States Supreme Court discussed above, we conclude the Oklahoma oath suffers from "overbreadth" and therefore must fall. The usual circumstance under which an opinion of the Attorney General is rendered would require no further amplification on our part but due to broad public interest resulting from the temper of the times we deem it proper to suggest that a constitutional loyalty oath is not an impossibility. An oath which places no restrictions upon the political or philosophical pronouncements and beliefs of public officers and employees, including members of the faculty of our state universities and colleges is, at this time, valid. The following oath was held constitutional in Knight v. Board of Regents, 269 F. Supp. 339, (Dist.Ct. N.Y.), affirmed, 19 L.Ed.2d 812, 88 S.Ct. 816: "`I do solemnly swear (or affirm) that I will support the Constitution of the United States of America and the Constitution of the State of New York and that I will faithfully discharge, according to the best of my ability, the duties of the position of (title of position and name or designation of school, college, university or institution to be here inserted), to which I am now assigned.'" The Court said: "So far as we can determine, the precise question of whether an oath such as that provided for by Section 3002 may constitutionally be required of teachers has not been ruled upon by the Supreme Court. That Court, however, has recently stated that Georgia's requirement that her legislators take a similar oath in no way impinges upon the First Amendment's protection of free speech. Bond v. Floyd, 385 U.S. 116, at 132, 87 S.Ct. 339, 17 L.Ed.2d 235
(1966). Moreover, the Court, in striking down so-called `negative loyalty oath' requirements of the states, has never suggested that the First Amendment proscribes any form of oath or affirmation required of teachers. See e.g., Elfrandt v. Russell, 384 U.S. 11 86 S.Ct. 1238,16 L.Ed.2d 321 (1966). "Plaintiffs, conceding that it is constitutionally permissible to demand from public officials, federal and state, an oath or affirmation substantially the same as that set forth in Section 3002, suggest that different considerations apply to teachers. In sum, it is said that teachers' speech must be totally `free of interference'. But, as may be implied from what has already been said, we interpret the statute to impose no restrictions upon political or philosophical expressions by teachers in the State of New York. A state does not interfere with its teachers by requiring them to support the governmental systems which shelter and nourish the institutions in which they teach, nor does it restrict its teachers by encouraging them to uphold the highest standards of their chosen profession. Indeed, it is plain that a state has a clear interest in assuring `. . . careful and discriminating selection of teachers' by its publicly supported educational institutions. See Shelton v. Tucker, 364 U.S. 479, at 495496, 81 S.Ct. 247, at 256,5 L.Ed.2d 231, (1960), (dissenting opinion of Frankfurther, J.), see also majority opinion at 485,81 S.Ct. 86 260." In Hosack v. Smiley, 276 F. Supp. 876, (U.S. Dist. Ct. Colo.) the court approved a Colorado oath which simply stated: "I solemnly swear or affirm that I will support the Constitution of the State of Colorado and of the United States of America and the laws of the State of Colorado and of the United States." The Court said: "The oath in question is plain, straightforward and unequivocal. A person taking it is not left in doubt as to his undertaking. The obligation assumed is one of simple recognition that ours is a government of laws and not of men. Such an oath was upheld in Knight v. Regents of the University of the State of New York, 269 F. Supp. 339, 341
(S.D.N.Y. 1967) wherein it was said:" `The statutory language of support of the constitutional governments can be substantially equated to that allegiance which, by the common law, every citizen was understood to owe his sovereign.' "Nor does the oath have any tendency to curtail freedom of expression as guaranteed by theFirst Amendment (and incorporated in the Fourteenth). Recognition of and respect for law in no way prevents the right to dissent and question repugnant laws. Nor does it limit the right to seek through lawful means the repeal or amendment of state or federal laws with which the oath taker is in disagreement. Support for the constitutions and laws of the nation and state does not call for blind subservience. Such an extreme concept is not now nor has it ever been accepted." Assuming its advisability, we suggest an Oklahoma loyalty oath simply provide, as the Colorado oath, the following: "I solemnly swear or affirm that I will support the Constitution of the State of Oklahoma and of the United States of America and the laws of the State of Oklahoma and of the United States." It is the opinion of the Attorney General that 51 O.S. 36.2 [51-36.2] (1961), violates the First and Fourteenth Amendments of the United States Constitution and is, therefore, unconstitutional. In the last paragraph of your request you inquire, may the University pay a graduate assistant involved for the period of time he would have worked in the event the oath is unconstitutional. Our observation to this is that unquestionably it is necessary for a graduate assistant to have performed his services in order to be eligible for compensation. Since he refused to execute the oath which was a condition precedent to his lawful employment, there is no way that he can receive compensation for services he has not performed. The constitutional prohibition of Article X, Section 15
Oklahoma Constitution, against the State making any "donation by gift," would preclude payment unless actual services have been performed. It is the opinion of the Attorney General that a graduate assistant may not be paid by the University for services which have not been performed. (Brian H. Upp) ** SEE: OPINION NO. 68-167 (1968) ** ** SEE: OPINION NO. 68-199 (1968) ** ** SEE: OPINION NO. 68-167 (1968) **