William HASKETT et al., Plaintiffs,

v.

Walter E. WASHINGTON et al., Defendants.

Civ. A. No. 2007-68.

United States District Court
District of Columbia.

Dec. 4, 1968.

John W. Karr and Glenn R. Graves, Washington, D. C., for plaintiffs.

Charles T. Duncan, Corp. Counsel, John A. Earnest, Asst. Corp. Counsel, and Vincent E. Ferretti, Jr., Asst. Corp. Counsel, Washington, D. C., for defendants.

Sanford Jay Rosen, Baltimore, Md., for amici curiae.

Herman I. Orentlicher, Washington, D. C., for American Association of University Professors amicus curiae.

Lawrence Speiser, Washington, D. C., and Melvin L. Wulf, New York City, for American Civil Liberties Union amicus curiae.

Ralph J. Temple, Washington, D. C., for American Civil Liberties Union Fund amicus curiae.

Before WRIGHT and LEVENTHAL, Circuit Judges, and GREEN, District Judge.

PER CURIAM:

The four plaintiffs in this action are appointees to the faculty of the Federal City College of the District of Columbia.[1] In due course, after confirmation by the Board of Higher Education, each plaintiff executed a contract with the school authorities and moved to Washington to assume his professional duties. Sometime thereafter plaintiffs were advised that the District Government, as a condition of paying their salaries, would require each of them to execute the standard appointment affidavit for employees of the District Government, containing certain oaths. Claiming that the underlying statutory provisions providing for the oath are unconstitutional,[2] plaintiffs

---

[1.] The college was chartered by Congress in 1966. D.C.Code 31–1601 (1967 ed.). Plaintiffs' term of employment commenced in 1968–69, the college's inaugural academic year. Three plaintiffs were appointed as assistant professors, one as an associate professor.

[2.] 5 U.S.C. § 7311 (1964) (Supp. III) *Loyalty and striking.*

An individual may not accept or hold a position in the Government of the United States or the government of the District of Columbia if he—

(1) advocates the overthrow of our constitutional form of government;

(2) is a member of an organization that he knows advocates the overthrow of our constitutional form of government;

(3) participates in a strike, or asserts the right to strike, against the Government of the United States or the government of the District of Columbia; or

(4) is a member of an organization of employees of the Government of the United States or of individuals employed by the government of the District of Columbia that he knows asserts the right to strike against the Government of the United States or the government of the District of Columbia.

This requirement traces back to section 9A of the Hatch Act, 53 Stat. 1148 (1939). Section 9A made the provisions applicable to persons "whose compensation * * * is paid * * * or appropriated by any Act of Congress * * *" A subsequent version of the section refers to employees of the Government or its "agencies." Section 9A, as amended by 69 Stat. 624 (1955). In

brought this action to enjoin enforcement of the statute and to restrain the cognizant District officials from refusing to pay salary checks earned unless plaintiffs subscribe to the affidavits.

In its present posture the litigation brings before us an appointment affidavit, as modified by the District officials to conform to the advice of the Corporation Counsel,[3] which contains the following:

> I do not advocate nor am I knowingly a member of any organization that advocates the overthrow of our constitutional form of government. I do further swear (or affirm) that I will not so advocate, nor will I knowingly become a member of such an organization during the period that I am an employee of the District of Columbia Government.

Pursuant to statute a three-judge court was convened.[4] The United States was advised of the pendency of this action,[5] but has declined to intervene.[6]

I

Our disposition proceeds on a narrow ground. The statute as applied requires a college instructor to take an oath that he is not and will not knowingly become a member of an organization that advocates the overthrow of our constitutional form of government. Such a requirement has more than once been declared unconstitutional by the Supreme Court. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967); Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).[7] In *Keyishian*, the most recent pronouncement, the Court makes clear that the language in the oaths presented to these plaintiffs suffers from impermissible overbreadth—as covering passive and inert members of an organization as well as leaders and active members, and as covering members indifferent or even opposed to this objective of the organization as well as those specifically intending its furtherance. "Mere knowing membership without a specific intent to further the unlawful aims of an organization is not a constitutionally adequate basis for exclusion from such positions as those held by appellants [college professors]."[8]

its current form section 7311 is made specifically applicable to District employees. 80 Stat. 524, 5 U.S.C. § 7311 (Supp. III, 1968).

Provision for an employment affidavit is made in section 3333 of Title 5.

\* \* \* an individual who accepts office or employment in the Government of the United States or in the government of the District of Columbia shall execute an affidavit within 60 days after accepting the office or employment that his acceptance and holding of the office or employment does not or will not violate section 7311 of this title. The affidavit is prima facie evidence that the acceptance and holding of office or employment by the affiant does not or will not violate section 7311 of this title. 5 U.S.C. § 3333 (1964) (Supp. III).

3. The wording was suggested by the Corporation Counsel in an opinion dated August 23, 1968. That opinion expresses the view that the form of affidavit previously in use went beyond the provisions of the statute. With consent of the parties the complaint is considered as addressed to the revised affidavit.

4. 28 U.S.C. § 2282 (1964).

5. 28 U.S.C. § 2403 (1964).

6. A letter of the Assistant Attorney General to the Clerk of the District Court, dated September 16, 1968, states: "The United States has decided against intervention at this time."

7. In *Keyishian* the underlying requirement provided for exclusion of those knowingly belonging to an organization advocating the overthrow of the government by force, violence or unlawful means. 385 U.S. at 610, 616, 87 S.Ct. 675.

There is at least a subsidiary problem with the statute and oaths before us, that they are not limited to overthrow by dint of force or violence. The government says the language may be inept, but that this qualification can be read into the law and oath by implication. We need not decide the point.

8. 385 U.S. at 606, 87 S.Ct. at 685.

It is clear that the Constitution precludes the use of the appointment affidavit that the District officials require plaintiffs to sign. We decide only the litigation before us, and rule only on the statute as applied to these college instructors [9]—through the insistence on execution of the affidavit previously set forth. The plaintiffs are entitled to an injunction restraining enforcement of the statute as applied to them through the use of this affidavit.

## II

Amicus curiae has raised for our consideration several troublesome points. One contention is purely procedural, that the statute violates due process in that it fails to provide a procedure by which a nonsigner can demonstrate his fitness for public employment.

Another contention, which interweaves procedural and substantive aspects, is that the oath procedure, which places the burden of going forward and of proof on the oath taker, is in derogation of the First Amendment, as reinforced by the privilege against self-incrimination, since it may not be used by a government unless it meets a heavy burden of demonstrating the need for the inquiry, and cannot be justified in the case of an inquiry which blankets all government employees regardless of the sensitivity of their positions.[10] The foregoing, which attacks the procedure as defective precisely because it is made applicable to all government employees, sensitive or not, is supplemented by a variant contention that would particularly condemn its application to that unique government employee who is a university professor, because he is a member of a class entitled to that particular freedom of inquiry crystallized in the concept of "academic freedom," which may not be curtailed or trammeled unless both substantive standards and procedural techniques are demonstrated to be necessary in the light of some paramount government interest. There are also distinct, though not entirely unrelated, contentions addressed to that part of the statute which seeks to delimit the right to strike.[11]

Although, as already noted, these contentions are substantial and troublesome, the court believes that the opinion herewith filed, which holds the statute unconstitutional on narrower grounds, suffices to dispose of the present controversy.

So ordered.

J. SKELLY WRIGHT, Circuit Judge (concurring):

*Elfbrandt* [1] and *Keyishian* [2] made clear that mere knowing membership in an

9. *Keyishian*, like the case before us, involved college professors and the Court's opinion reflects particular concern for the safeguarding of academic freedom. "That [academic] freedom is therefore a special concern of the First Amendment, which does not tolerate laws that cast a pall of orthodoxy over the classroom." 385 U.S. at 603, 87 S.Ct. at 683.

10. Herein amicus relies, *inter alia*, on Lamont v. Postmaster General, 381 U.S. 301, 85 S.Ct. 1493, 14 L.Ed.2d 398 (1965); Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958); Schneider v. Smith, 390 U.S. 17, 88 S.Ct. 682, 19 L.Ed.2d 799 (1968); Garrity v. New Jersey, 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967); Gojack v. United States, 384 U.S. 702, 86 S.Ct. 1689, 16 L.Ed.2d 870 (1966); Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967);

United States v. Robel, 389 U.S. 258, 88 S.Ct. 419, 19 L.Ed.2d 508 (1967).

11. Amicus curiae calls our attention, e. g. to "Faculty Participation in Strikes," reprinted from the summer 1968 AAUP Bulletin [American Association of University Professors]. The question arises whether a university professor can be debarred from a government university because he is an active member of the AAUP which recognizes a limited exercise of right to strike by faculty members when the controlling agency "is inflexibly bent on a course which undermines an essential element of the educational process."

1. Elfbrandt v. Russell, 384 U.S. 11, 86 S.Ct. 1238, 16 L.Ed.2d 321 (1966).

2. Keyishian v. Board of Regents, 385 U.S. 589, 87 S.Ct. 675, 17 L.Ed.2d 629 (1967).

organization having as one of its purposes the overthrow of the government by force and violence cannot disqualify a person from public employment as a teacher. Under the rule of these cases, subsection (2) of 5 U.S.C. § 7311 (Supp. II 1965–66), as applied to plaintiffs, must fall. Thus I join the court in ordering an injunction restraining officials of the District of Columbia government from requiring these employees to sign an affidavit meant to enforce that subsection. I also join the court in not reaching at this time plaintiffs' attack upon the constitutionality of the other conditions of public employment contained in Section 7311.

I believe, however, that plaintiffs are entitled to their injunction on another ground which we should properly reach at this time. Section 7311 defines certain acts and statuses which disqualify persons from federal employment.[3] 5 U.S.C. § 3333 (Supp. II 1965–66) provides that each employee of the federal government shall, within 60 days of his employment, file an affidavit "that his acceptance and holding of the office or employment does not or will not violate section 7311 of this title." It further provides that the affidavit is *prima facie* evidence that the affiant's employment "does not or will not violate section 7311." But it does not explicitly provide what effect *refusal* to file the affidavit shall have.

The officials of the District of Columbia have operated on the premise that, since the affidavit requirement is meant to enforce a condition of eligibility for employment, termination of employment is the proper remedy for refusal to file. This perhaps natural reading of the statute would here have the effect of placing on federal employees the burden of showing—by oath—that they do not, individually or through their association with

others, espouse certain ideas, on pain of being fired without a hearing.[4] I believe that such a result is inconsistent with the rigorous due process standards which govern the regulation of speech and association.

In the test oath cases of the early 1950's, the Supreme Court upheld the substance of oaths which would be struck down on vagueness or overbreadth grounds today. Adler v. Board of Education of City of New York, 342 U.S. 485, 72 S.Ct. 380, 96 L.Ed. 517 (1952); Garner v. Board of Public Works of Los Angeles, 341 U.S. 716, 71 S.Ct. 909, 95 L.Ed. 1317 (1951). But even in these cases the Court allowed the dismissal of non-swearing employees only after noting that the oath programs in question allowed the employees a hearing at which they could explain their refusal to swear, or could rebut any presumptions raised by that refusal. *Adler, supra,* 342 U.S. at 494–496, 72 S.Ct. 380; *Garner, supra,* 341 U.S. at 719, 71 S.Ct. 909. And in Nostrand v. Little, 362 U.S. 474, 475, 80 S.Ct. 840, 841, 4 L.Ed.2d 892 (1960), the Court remanded a state case upholding a test oath program to determine whether the non-swearing employees had been offered a hearing at which they could "explain or defend [their] refusal to take the oath." Those cases require that federal employees be afforded a hearing before they can be discharged for failure to file the Section 3333 affidavit.

But in my view the mere proffer of a hearing at which employees could "explain or defend" refusal to take the oath would not cure the due process defects inherent in this oath program. On the basis of Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), I would hold that the government may not use an oath program to place upon its employees the burden of showing that their speech and associations do not stray

---

3. See Note 2 of the majority opinion.

4. Apart from subsection (2), which we strike down today, the three other subsections of § 7311 proscribe speech or association which is arguably protected by

the First Amendment: advocacy of the overthrow of "our constitutional form of government"; advocacy of the right to strike against the federal government; and knowing membership in an organization which asserts that right.

across the often elusive line between the protected and the improper. In *Speiser* the Court struck down California's denial of tax exemptions to persons who refused to abjure advocating the overthrow of the government by force and violence. The vice of the procedure was not any denial of a hearing, but placing the burden on the citizen to show that his speech was protected, and hence chilling the exercise of First Amendment rights:

> " * * * [W]here particular speech falls close to the line separating the lawful and the unlawful, the possibility of mistaken factfinding—inherent in all litigation—will create the danger that the legitimate utterance will be penalized. The man who knows that he must bring forth proof and persuade another of the lawfulness of his conduct necessarily must steer far wider of the unlawful zone than if the State must bear these burdens. * * * In practical operation, therefore, this procedural device must necessarily produce a result which the State could not command directly. It can only result in a deterrence of speech which the Constitution makes free. * * * "

357 U.S. at 526, 78 S.Ct. at 1342.

Thus the technique of the self-executing oath—the requirement that the recipient of a public benefit bear the burden of showing his loyalty by swearing to it—was dealt a heavy blow in *Speiser*.[5] The Court, however, elected to distinguish cases then on the books which did permit oath programs conditioning public benefits upon abjuring certain political advocacy and associations: *Garner, supra*; Gerende v. Board of Supervisors of Elections of Baltimore, 341 U.S. 56, 71 S.Ct. 565, 95 L.Ed. 745 (1951); and American Communications Association v. Douds, 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950). It found in those oath programs not merely an intent to punish the disloyal as in *Speiser*, but a policy of protecting sensitive positions from subversives. 357 U.S. at 527, 78 S.Ct. 1332. Without expressly approving the earlier cases, the Court found that this consideration distinguished them from *Speiser*.

Since the early oath cases, and indeed since *Speiser* itself, the Court has moved far in reassessing the balance between fears of subversion and the interest in free speech and association. This is best illustrated by its recent treatment of the substance of oaths approved in the early cases. *Keyishian* struck down a program which was in many respects identical to that approved in *Adler*. In United States v. Brown, 381 U.S. 437, 85 S.Ct. 1707, 14 L.Ed.2d 484 (1965), the Court found invalid as a bill of attainder an oath program not readily distinguishable from that approved in *Douds*. And in Whitehill v. Elkins, 389 U.S. 54, 88 S.Ct. 184, 19 L.Ed.2d 228 (1967), an application of the oath earlier permitted in *Gerende* was found unconstitutional. And in each of these cases, the oath was arguably designed—as is the oath in the instant case—to protect the public from subversion, rather than merely to punish unpopular ideas. Indeed, *Elfbrandt* and *Keyishian* essentially hold that only association which could be punished as criminal under Scales v. United States, 367 U.S. 203, 81 S.Ct. 1469, 6 L.Ed.2d 782 (1961), can serve as the basis for dismissal of public employees. *Elfbrandt, supra*, 384 U.S. at 15–16, 86 S.Ct. 1238; *Keyishian, supra*, 385 U.S. at 606–608, 87 S.Ct. 675.

Thus the Court has implied that, at least with respect to membership in suspect organizations, the same substantive limitations govern abridgement of speech and association by dismissal as govern abridgement by criminal prosecution.[6]

5. *See* Note, Loyalty Oaths, 77 Yale L.J. 739, 764 (1968).

6. In another area, that of libel of public figures, the Court has applied stiff First Amendment standards to dismissal of public school teachers, working from the rule laid down by New York Times Co. v. Sullivan, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964), to govern civil suits for damages. Pickering v. Board of Education of Township High School

It has repudiated earlier suggestions [7] that, because public employment is a "privilege" and not a "right," employees may be dismissed for speech and association for which they could not be punished. While no person has an abstract "right" to public employment, everyone has a right not to be barred or dismissed from such employment because of protected speech or association.

Where such a substantive First Amendment right exists, rigorous procedural guarantees must protect it. I am not suggesting that, in dismissing an employee for speech or association, the government operates under the same procedural constraints as in a criminal prosecution. For instance, a jury trial is not required, and it may be that the improper speech or association need not be proved beyond a reasonable doubt. But at the very least the procedural standard erected in *Speiser* to govern the denial of tax exemptions should now be held to govern dismissal of public employees where the ground of dismissal is activity on the part of those employees which falls close to the area protected by the First Amendment. That standard is: the state cannot place on the employee the burden of showing that his speech and associations fall on the safe side of the First Amendment line.

Applying these principles to the instant case, it appears that to permit or require dismissal for refusal to file the loyalty affidavit demanded by Section 3333 in effect places the burden upon the federal employee to show that he does not fall within the forbidden categories of Section 7311.[8] In my view, refusal to file cannot be in itself a ground for dismissal, nor can it be the occasion for requiring the employee to come forward and show by some means other than the oath that his employment would not violate Section 7311. Since Section 3333 does not provide what effect refusal to file may have, I would hold that it merely makes available to the employee a means of providing, according to its terms, "prima facie evidence" that he does not come within the Section 7311 categories. Conversely, of course, refusal to file might alert officials to a possible violation of Section 7311. But if an employee is to be discharged under that section, the government must bear the burden of showing, at a fair hearing, that his further employment would be inconsistent with its provisions.

---

Dist. 205, Will County, 391 U.S. 563, 569, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968).

7. *See, e. g.*, Adler v. Board of Education of City of New York, 342 U.S. 485, 492, 72 S.Ct. 380, 96 L.Ed. 517 (1952).

8. It might be argued that §§ 3333 and 7311 read together are properly seen as imposing conditions precedent upon federal employment, as well as giving grounds for discharging established employees. Since these conditions of employment are imposed by statute, applicants for federal jobs have constructive notice that they must be met if the applicants are to be accepted. And, the argument would run, substantially lower standards of due process apply to rejection of applicants for jobs than to the discharge of persons who have already taken on the rights conferred by a contract of employment.

There are two answers to this argument in the instant case. First, plaintiffs have alleged, and the government has not denied, that contracts of employment have been signed and that plaintiffs are, pending the outcome of this litigation, employees of the District of Columbia. In this procedural posture, the standards applicable to discharge from existing employment are appropriate.

Second, even in cases where signing the test affidavit is made a condition precedent to employment, the principles of Speiser v. Randall, 357 U.S. 513, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958), forbid shifting the burden to the applicant to show that his speech or associations do not render him ineligible for employment. In *Speiser* itself the plaintiffs were applicants for a public benefit which had not yet vested in them by contract or otherwise—in that case a tax exemption. *Speiser* thus stands for the proposition that applicants for benefits—there a tax exemption, here public employment—are protected from the burden of showing that their speech and associations fall on the safe side of the line.