NEW LEFT EDUCATION PROJECT et al.,

v.

BOARD OF REGENTS OF the UNIVERSITY OF TEXAS SYSTEM.

Civ. A. No. A–69–CA–106.

United States District Court,
W. D. Texas,
Austin Division.

Sept. 3, 1970.

David R. Richards, Austin, Tex., for plaintiffs.

Crawford Martin, Atty. Gen., W. O. Shultz, Asst. Atty. Gen. of Tex., Austin, Tex., for defendant.

Before THORNBERRY, Circuit Judge, SUTTLE and ROBERTS, District Judges.

## MEMORANDUM OPINION

### PER CURIAM.

This suit was born of a state court proceeding instituted by the University of Texas Board of Regents against the New Left Education Project and a number of individuals, seeking to restrain them from violating two Regents' rules by distributing a newspaper known as the *Rag* on the Austin campus of the University of Texas. The defendants in that suit filed this case requesting that this Court enjoin the further prosecution of the state court suit, and declare the Regents' rules which found the basis of that suit unconstitutional.

This Court met in November, 1969, and decided this case was properly one to be heard by a three-judge court convened under 28 U.S.C. § 2281 (1964). The Court also allowed joinder as parties plaintiff the Young Democratic Club at the University of Texas at Austin, and a number of individual University of Texas students interested in the "free flow of ideas" and the "full enjoyment of First Amendment rights" on the University of Texas campus. At the same time, the Court refused the origi-nal plaintiffs declaratory and injunctive relief and dismissed them as plaintiffs so that there would be no interference with the state judge's adjudication of the proceedings pending against them in state court. The remaining plaintiffs, however, were allowed to challenge the two rules "in further proceedings" in the Court. The Young Socialist Alliance of the University of Texas was subsequently also allowed to intervene as a party plaintiff. The case is now before us on the plaintiffs' motion for summary judgment and the defendants' motion to dismiss.

### I.

The defendants argue that this suit should be dismissed because the state court judgment rendered in the suit against the severed plaintiffs in this case is res judicata on the question of the constitutionality of the two Regents' rules challenged here. The state court has determined that the two rules "are not in violation of the First and Fourteenth Amendments," and has granted a temporary injunction against the New Left Education Project, individuals associated with the publication and distribution of the *Rag*, and all persons acting in concert with them, restraining them from "selling or distributing the newspaper known as the *Rag* upon the campus of The University of Texas at Austin * * *" and from engaging in any other violation of the commercial and non-commercial solicitation rules involved in this case.

Assuming *arguendo* that this Court's earlier decision to allow joinder of parties plaintiff under Federal Rule 20(a) was, as the Regents argue, in fact a determination that all the parties in federal court constituted a class under Federal Rule 23, it still does not follow that the state court injunction issued against some of the federal class members will support res judicata as to the remainder of the class. In the first place, there is no final judgment in the state court. Under Texas law, a tempo-

rary injunction "[can] not be the basis of res judicata since it is only an interlocutory order * * *." Miers v. Brouse, 153 Tex. 511, 516, 271 S.W.2d 419, 421 (1954). Thus there is no full-faith-and-credit issue presented in this case which might justify a holding of res judicata. *Compare* Gart v. Cole, 263 F.2d 244 (2d Cir. 1959).

Secondly, the state court proceeding never purported to deal with a "class" any larger than individuals associated with the publication and distribution of the *Rag*. The remaining plaintiffs in the larger "class" in the federal lawsuit were never in state court, and are certainly not bound by even the most expansive reading of that court's injunction.

In the final analysis the Regents' res judicata argument amounts to no more than a reliance on England v. Board of Medical Examiners, 375 U.S. 411, 84 S. Ct. 461, 11 L.Ed.2d 440 (1964) for the proposition that in this case the entire federal "class" voluntarily chose to fully litigate its constitutional claims as a class in state court. This assertion is unsupportable. On the basis of a "technical" rule—the anti-injunction statute, 28 U.S.C. § *2283* (1964)—and the policy of federal-state comity, this Court earlier temporarily denied some of the plaintiffs the right to litigate their federal claims in federal court. The Regents' suggestion that this Court's respect for the policy of comity entitles them to a judgment of res judicata flies in the face of the strong policy in favor of respecting a Plaintiff's choice of a federal forum for litigating his federal claims. As the Court in *England* stated, "[t]he right of a party plaintiff to choose a Federal court where there is a choice cannot be properly denied," 375 U.S. at 413, 84 S.Ct. at 465, *quoting*

Willcox v. Consolidated Gas Co., 212 U. S. 19, 40, 29 S.Ct. 192, 53 L.Ed. 382 (1909).

Even if the *Rag* plaintiffs could be said to have defended the state court suit in such a way as to have voluntarily foregone their right to return to this Court,[1] the remaining plaintiffs, having never even been in state court, can hardly be held to have relinquished their right to return, especially since this Court's earlier order left those plaintiffs in this Court for "further proceedings" in their case.

Defendants' motion to dismiss is accordingly denied. Since there are no material facts at issue, we find this case ripe for determination on the plaintiffs' motion for summary judgment.

## II.

The Regents' Rules at issue prohibit both "commercial"[2] and "non-commercial"[3] solicitation on the campus of any component institution of the University of Texas System. "Commercial" solicitation is broadly defined to include not only the sale or contract for sale of any item of personal property, but also the "inducement of any person * * * to contract with regard to * * * anything the offeror may offer." Commercial solicitation is prohibited except for five permissible categories: (1) solicitation inside a Student Union Building that has been approved by the governing body of the Union; (2) the sale of any publication authorized by an agency of the component institution; (3) solicitation pursuant to a contract between the vendor and the governing authority of a campus; (4) the sale of publications from vending machines at approved location; and (5) any solicitation necessary for the educa-

---

1. They have not sought to return, so this Court does not need to decide the issue.

2. University of Texas Board of Regents, Rules and Regulations, Ch. VI, pt. 1, § 6.11.

3. University of Texas Board of Regents, Rules and Regulations, Ch. VI, pt. 1, § 6.12.

tional purposes of the University.[4] Non-commercial solicitation is not defined in Rule 6.12. Nonetheless, such solicitation is prohibited without the prior approval of the component institution head or his delegate. Approval may be granted for "public benevolent purposes," but not for fund-raising for the benefit of a particular person or group. However the institution head of a campus may approve the solicitation of funds by registered student organizations from their members, but only "at official meetings of the organization."[5]

The Plaintiffs argue that both rules violate their first amendment rights of speech and association because they are overly broad and are mere licensing schemes. As these rules are currently applied, neither the Young Democrats nor the Young Socialist Alliance can solicit dues from potential members of their organization on campus without permission of the institutional head, and then only at official meetings.[6] Moreover, neither group can sell political material, such as tracts by Leon Trotsky or even campaign bumper stickers, on the

4. *Regents' Rules and Regulations, Chapter VI, Part One*

6.11 Commercial solicitations will not be authorized on the campus of any component institution of the University of Texas System, except as otherwise provided in this section. Commercial solicitations include the sale, disposition of or contract to dispose of any item of personal property; the inducement of any person, group, or organization to contract with regard to any item of personal property, service, or anything that the offerer may offer; or the solicitation of funds or personal property. The following commercial solicitations are permissible:

(1) commercial solicitations in a Student Union Building that have been approved by the Board of Directors or by the appropriate union governing body subject to applicable institutional rules and regulations and applicable Regents' Rules and Regulations;

(2) the sale of any authorized student publication or any publication authorized by an agency of a component institution;

(3) any commercial solicitation made pursuant to a contract or agreement between the administration of a component institution and the vendor;

(4) the sale of any newspaper or other publication by means of a vending machine located in a campus building, if a certain area or areas within a campus building have been designated in advance by the institutional head or his representative as appropriate for such sales; and

(5) any commercial solicitation necessary for the normal administration, operation, and maintenance

of any component institution as an educational institution.

5. *Regents' Rules and Regulations, Chapter VI, Part One*

6.12 No noncommercial solicitations, including fund raising for charity, shall be permitted on a campus of a component institution of The University of Texas System without the prior approval of the institutional head or his delegate.

6.121 Such approval by the institutional head may be granted for solicitation or fund raising for the needy or suffering, relief of the poor, or for public benevolent purposes, but it may not be granted for the personal benefit of an individual, group, or registered student organization, to pay any fee, fine, or other charge arising from a violation of federal, state, or local law.

6.122 Any noncommercial solicitation, including fund raising for charity, that is approved by the institutional head or his delegate shall be conducted in accordance with reasonable institutional regulations regarding time, place, procedure and financial reporting and accountability.

6.123 Notwithstanding the provisions of Section 6.121 above, with the approval of the institutional head or his delegate, a registered student organization may solicit or raise funds from its own members for the benefit of the organization but only at official meetings of the organization.

6. The facts also establish that campus organizations are allowed to solicit dues and members during registration week at the beginning of each semester. The authority for this *de facto* exception to the facially all-inclusive rule against noncommercial solicitation, which purports to cover dues solicitation, is unclear.

main malls of the Austin campus. It is undisputed that these rules seriously impede the associational activities of the organizations, primarily because the rules decrease their ability to procure both members and funds. It is also undisputed that a great deal of commercial and non-commercial solicitation coming within the heretofore noted exceptions to the rules is allowed on the Austin campus.[7] It is not clear, however, which of the two rules questioned prohibit the activities engaged in by the plaintiffs. For example, solicitation of dues from new members by either organization is purportedly covered by the terms of the non-commercial solicitation rule, which prohibits such solicitation without approval of the institutional head, and then only at official meetings of the organization. Thus solicitation of dues on campus would violate the non-commercial rule. But it seems clear that such solicitation would also constitute "the solicitation of funds" within the meaning of the commercial solicitation rule. Indeed, under the commercial rule, soliciting a person to become a dues-paying member of an organization would constitute a violation of that portion of the rule which prohibits the "inducement of any person * * * to contract with regard to * * * anything that the offeror may offer"—namely, membership in the organization. Moreover, some of the activities at issue—selling books, pamphlets, newspapers and campaign paraphernalia for fund-raising purposes—are clearly covered by the prohibition against the commercial sale of personal property. The sale of a newspaper like the Young Socialists' *The Militant*, if not for profit, might be either commercial or non-commercial. It seems significant that in the state injunction suit the Regents claimed that

the activities of the *Rag* (a supposedly non-profit organ of the New Left Education Project) violated both rules. Although the rules are not challenged on the grounds of vagueness there is enough ambiguity in their coverage to warrant this Court's considering the rules together for purposes of the overbreadth question raised by the plaintiffs.

### III.

■ We start from the dual premises that soliciting dues-paying members for a lawful organization—especially a political one—is speech and associational activity of a fairly high order, see N. A. A. C. P. v. Alabama, 357 U.S. 449, 78 S. Ct. 1163, 2 L.Ed.2d 1488 (1958); Schneider v. State, 308 U.S. 147, 60 S. Ct. 146, 84 L.Ed. 155 (1939), as is distributing literature which "communicate[s] thoughts between citizens, and discuss[es] public questions," Hague v. C. I. O., 307 U.S. 496, 515, 59 S.Ct. 954, 964, 83 L.Ed. 1423 (1959)—especially when its content is primarily political. Such literature is no less protected by virtue of the fact that it is sold, whether with or without the realization of an actual profit. Ginzburg v. United States, 383 U.S. 463, 474, 86 S.Ct. 942, 16 L. Ed.2d 31 (1966). New York Times v. Sullivan, 376 U.S. 254, 266, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964).

■ While it is often said that first amendment rights are not absolute, and that conduct incidental to the exercise of speech in public places is subject to reasonable nondiscriminatory regulation governing time, manner, and place, Cantwell v. Connecticut, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1939), it is well-settled law that once it is determined that state action impinges on

---

7. For example, various student publications, including the Texas Ranger, the Daily Texan, the Texas Quarterly, and the Texas Law Review, are sold on campus, and the Student Association sells life and hospitalization insurance, all under exceptions to the commercial solicitation rule. Examples of non-commercial solicitation permitted on campus are sales of balloons to solicit funds for the needy, sales of cakes and cookies for home economics departmental scholarships, and maintenance of a booth on campus for membership enlistment and literature distribution by the Campus Crusade for Christ.

high-order first amendment rights—which these rules undoubtedly do—then the burden of proof is on the state to show that the governmental interests asserted to support the impingement are "compelling." N. A. A. C. P. v. Alabama, 357 U.S. 449, 78 S.Ct. 1163, 2 L. Ed.2d 1488 (1958); Sweezy v. New Hampshire, 354 U.S. 234, 265, 77 S.Ct. 1203, 1 L.Ed.2d 1311 (Frankfurter, J., concurring) (1957). Absent such a showing, any "time", "manner", or "place" regulation is unreasonable. An educational institution's interest in preventing substantial disorder or material disruption of classroom activity is, of course, such a "compelling" state interest, which justifies some reasonable regulation. Tinker v. Des Moines Community School District, 393 U.S. 503, 513, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). Not surprisingly, the Regents assert that preventing such disruption is precisely the purpose of the rules.[8] From this premise, however, it does not follow that any rule the Regents might pass its impervious to constitutional attack. For it is quite clear that even "[l]egitimate legislative goals 'cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved.'" Elfbrandt v. Russell, 384 U.S. 11, 18, 86 S.Ct. 1238, 1242, 16 L. Ed.2d 321 (1966). This "less restrictive means" principle is especially applicable to regulations that impinge on first amendment speech and associational rights, even when accompanied by conduct. Talley v. California, 362 U.S. 60, 80 S.Ct. 536, 4 L.Ed.2d 559 (1960); Schneider v. State, 308 U.S. 147, 60 S. Ct. 146, 84 L.Ed. 155 (1939); see Hiett v. United States, 415 F.2d 664 (5th Cir. 1969), cert. denied 397 U.S. 936, 90 S.Ct. 941, 25 L.Ed.2d 117 (1970).

■■ Thus, while the Regents can certainly prohibit disruptive or fraudulent solicitation, they must do so in a manner that strikes at the very evil they wish to prevent. Applying this principle to the case at hand, we find that the Regents' solicitation rules at issue are unconstitutionally overbroad.

The severe limitations the rules place on solicitation generally are unreasonably restrictive of the clearly protected activities engaged in by the plaintiffs in this case. Thus by broadly limiting all solicitation in the two rules, the Regents have simply failed to speak with that small calibre precision required of regulations touching first amendment rights.

This holding in no way impairs the right of the Regents to prohibit activity disruptive of the educational processes on campus. There have been complaints that magazine salesmen have disrupted classes by passing out subscription forms during class meetings. Such activity is clearly prohibitable by a nondiscriminatory rule forbidding classroom disruption. Similarly, to the extent that campus congestion is a problem created by setting up solicitation booths, the Regents could formulate a reasonable, nondiscriminatory rule limiting the number of such booths allowed on campus at any one time. If litter is a concern, an anti-litter rule would be appropriate. Perhaps most importantly for purposes of achieving the primary stated objective of the present rules, a much narrower and constitutionally permissible rule could undoubtedly be devised that would severely limit "purely commercial" solicitation on campus, see Valentine v. Chrestensen, 316 U.S. 52, 62 S.Ct. 920, 86 L.Ed. 1262 (1942). But cf. Ginzburg v. United States, 383 U.S. 463, 474 n. 17, 86 S.Ct. 942, 16 L.Ed.2d 31 (1966); New York Times v. Sullivan,

8. The Chairman of the Board of Regents asserts that the object of the rules is to "keep vendors, such as insurance salesman, balloon salesman, and other kinds of salesmen, as well as those persons soliciting funds from coming on the campus where we have a highly concentrated group of people." Further, the University "does" not want solicitors or salesmen, of whatever kind, coming onto campus, walking up and down the halls, and knocking on doors trying to sell their wares, thus interfering with the academic activities of the institution."

376 U.S. 254, 266, 84 S.Ct. 710, 11 L. Ed.2d 686 (1964); Hiett v. United States, *supra*.

IV.

 The constitutional vice of the present Regents' rules governing solicitation extends beyond their overbreadth. They are also invalid as licensing regulations that do not set out adequate guidelines for the exercise of the licensing authority's power to grant or deny permission to exercise first amendment rights. Despite the commercial solicitation rules' broad prohibition of the sale of publications on campus outside of certain areas, any publication can be sold on campus if it has been "authorized by an agency of a component institution." There are no standards governing the issuance of such authorization. There is a similar provision in the noncommercial solicitation rule, which permits such solicitation if the institutional head finds that the fund raising is for "the needy or suffering, relief of the poor or for public benevolent purposes." As the plaintiffs point out, we are left to surmise what causes constitute "public benevolent purposes," as are the institutional heads who are charged with the administration of this regulation. Thus these regulations vest standardless discretion in the institutional head or his agency-delegate to grant or withhold exercise of first amendment rights. It is well settled law that regulations cannot be allowed to stand when they make enjoyment of first amendment freedoms contingent upon the will of an administration. See Staub v. City of Baxley, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); Largent v. Texas, 318 U.S. 418, 63 S.Ct. 667 (1943); Schneider v. State, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); Lovell v. City of Griffin, 303 U.S. 444, 58 S.Ct. 666, 82 L.Ed.2d 949 (1938).

It is therefore Adjudged that Sections 6.11 and 6.12 of the Regents Rules and Regulations are unconstitutional; it is further Ordered that the Regents are hereby Enjoined from enforcing either section.