LEONARD HAAS, Executive Vice President, University of WisconsinSystem
Your recent letter and its enclosures inform me of the following fact situation:
In February, 1971, a committee consisting of student, faculty and administrative representatives developed a policy statement on the subject of solicitation on the campus of the now University of Wisconsin-Eau Claire. "Solicitation" was defined as "selling, peddling and/or distribution of material, free or otherwise." The statement of policy was aimed at providing to both on-campus and off-campus individuals and organizations the right to distribute information, espouse their views and solicit the student *Page 374 
body. It was also, however, aimed at limiting the places of solicitation on the campus so that solicitors would not unreasonably intrude on the privacy of students.
The policy statement as developed by the committee was examined and approved by the campus administration. It was also endorsed by the Student Senate and was published in the 1971-1972 Student Handbook.
The portions of the policy statement which relate to solicitation in residence halls provide:
"D. All requests for such use of University structure and grounds will be granted only upon the completion of a standard contract that may be obtained from the Director of Housing, in the case of solicitation within on-campus housing, and from the Director of University Centers in all other cases.
"E. Solicitation in the University Residence Halls will require approval of the Director of Housing, who may seek the advice of the Inter-Residence Hall Council."
Thereafter, a representative of a student political organization requested the approval of the Director of Housing for door-to-door solicitation in the residence halls. This request was denied, although the representative was informed that his group could distribute its materials, etc., in the main lobby of the residence halls. The request for approval was denied because uninvited door-to-door solicitation in the residence halls was considered to be an unreasonable intrusion on the privacy of the student residents. Apparently, no request for door-to-door solicitation in the residence halls by any other groups or individuals has been approved.
The student representative of the political organization involved, then, asked the Inter-Residence Hall Council for permission to make door-to-door solicitations in the residence halls. That Council also refused the request and agreed with the action of the Director of Housing in refusing to approve door-to-door solicitation in the residence halls. The Council suggested that the group representative ask for a group meeting in the dorms of interested residence hall students. *Page 375 
Thereafter correspondence was exchanged between the Chairman of the Chippewa Valley Civil Liberties Union and the Chancellor of the University of Wisconsin-Eau Claire. The Chairman of the CVCLU asserted that the denial of approval for uninvited door-to-door solicitation in the residence halls to representatives of a political organization constituted a violation of the rights of the potential solicitors as guaranteed by the First Amendment to the United States Constitution. An additional suggestion by the University Chancellor that solicitors make appointments to see individual residents was also rejected by the Chairman.
Your letter asks for my opinion on whether the action by University of Wisconsin-Eau Claire officials in refusing to approve door-to-door solicitation in the residence halls is a violation of the constitutional rights of potential political solicitors to freedom of speech or freedom of assembly. These freedoms, as guaranteed by the First Amendment to the United States Constitution, are very important and vigorously protected constitutional rights. They are, however, subject to reasonable restrictions as to time, place, manner and duration, and accommodation of them with other constitutionally protected rights is sometimes necessary. See such cases as Tinker v. DesMoines Independent Community School District (1969), 393 U.S. 503,89 S.Ct. 733, 21 L.ed. 2d 731; Shuttlesworth v. City ofBirmingham (1965), 382 U.S. 87, 86 S.Ct 211, 15 L.ed. 2d 176; Coxv. Louisiana (1965), 379 U.S. 536, 85 S.Ct. 453, 13 L.ed. 2d 471, and Lloyd Corporation, Ltd. v. Tanner (1972), 407 U.S. 551,92 S.Ct. 2219, 33 L.ed. 2d 131.
No one would or could seriously challenge the right of a private landlord, who owns and operates an apartment building or rooming house, to prohibit all door-to-door solicitation, political or otherwise, in his building. There is no basic or relevant difference between residence halls of a public institution of higher learning and a privately owned apartment building or rooming house, except that a state agency is the landlord. *Page 376 
Merely because the state is the landlord does not mean that its premises are available as places in which trespassers or uninvited guests can exercise their First Amendment rights. As stated in Lloyd Corporation, Ltd. v. Tanner (1972), 407 U.S. 551,92 S.Ct. 2219, 2228, 33 L.ed. 2d 131, which was decided on June 22, 1972:
"Although * * * the courts properly have shown a special solicitude for the guarantees of the First Amendment, this Court has never held that a trespasser or an uninvited guest may exercise general rights of free speech on property privately owned and used nondiscriminatorily for private purposes only.Even where public property is involved, the Court has recognizedthat it is not necessarily available for speech, pickets or othercommunicative activities. * * *" (Emphasis added)
The court, then, went on to cite and quote from Adderley v.State of Florida (1966), 385 U.S. 39, 87 S.Ct. 242,17 L.ed. 2d 149, in which it had written:
"`The State, no less than a private owner of property, haspower to preserve the property under its control for the use towhich it is lawfully dedicated. For this reason there is no merit to the petitioners' argument that they had a constitutional right to stay on the property, over the jail custodian's objections, because this "area chosen for the peaceful civil rights demonstration was not only `reasonable' but also particularly appropriate. * * *" Such an argument has as its majorunarticulated premise the assumption that people who want topropagandize protests or views have a constitutional right to doso whenever and however and wherever they please. That concept ofconstitutional law was vigorously and forthrightly rejected in two of the cases petitioners rely on, Cox v. Louisiana, (379 U.S. 536), at 554-555, (85 S.Ct. 453, 13 L.Ed.2d 471) and (379 U.S. 559), at 563-564, (85 S.Ct. 476, 13 L.Ed.2d 487). We reject itagain. The United States Constitution does not forbid a State tocontrol the use of its own property for its own lawfulnondiscriminatory purpose.'" (Emphasis added) *Page 377 
The purpose of residence halls is to provide a "home" for those students who rent the facilities and the halls are used for that lawful purpose. The state can properly act to protect the privacy of the student resident in his "home," which is rented from the state.
In Wauwatosa v. King (1971), 49 Wis.2d 398, 182 N.W.2d 530, our Wisconsin Supreme Court was faced with a challenge to the validity of a city ordinance prohibiting picketing "before or about the residence or dwelling house of any individual." Certain pickets were arrested and convicted of a violation of the ordinance. They claimed that the ordinance was unconstitutional in that it violated their First Amendment and other federal constitutional rights. The court, after analyzing and discussing the relevant decisions of the United States Supreme Court, held, p. 406:
"* * * A man is not to be made a captive in his own home. Neither is he required to defend it, as some new Alamo, against unwelcome intruders or disturbers. It is a proper serving of a proper state interest for the state or community to protect the privacy and tranquility of the home of its residents."
It is, therefore, my opinion that in the fact situation above described the state has not violated any First Amendment or other constitutional rights of potential solicitors when state officials, who operate state-owned residence halls, seek to protect the privacy of their tenants by making a nondiscriminatory refusal to approve door-to-door solicitation in the residence halls.
Although your letter also refers to the "Policy Statement/Solicitation," I will not further lengthen this letter by discussing or analyzing it. I do not believe that that is necessary in order to provide you with guidance in dealing with the problem raised by the chairman of the CVCLU. I do, however, call to your attention, and that of campus administrators, the discussion and decision in New Left Education Project et al. v.Board of Regents of the University of Texas System (W.D. Tex. 1970), 326 F. Supp. 158. The opinion therein by a three-judge federal district court deals with the constitutional validity of rules on campus solicitation adopted by the Regents of the University of Texas System. The judgment in that case was subsequently *Page 378 
vacated by the United States Supreme Court, but this was due to a jurisdictional problem and does not constitute a rejection (or approval) of the decision on the merits of the dispute. Of interest also is Eisner v. Stamford Board of Education (2d Cir. 1971), 440 F.2d 803, involving a "Policy on Distribution of Printed or Written Material" adopted by the Board of Education of Stamford, Connecticut.
I hope that the above discussion will be of assistance to you.
RWW:BRB