ROBERTSON, Justice:
Appellants, A. B. Thompson, Jr., Leon Thompson and Davis Stewart, were indicted, tried and convicted in the Circuit Court of Amite County of participating in a riot in the Town of Gloster, Mississippi. Each *642 defendant was sentenced to three years in the State Penitentiary.
About 10:00 p. m., Sunday night, October 3, 1971, the defendants were part of a crowd variously estimated at from 25 to 60 people congregated on and milling about on a main business street in the small town of Gloster, Mississippi. Officer Lewell Toney, a 40-year old policeman, testified that he heard a lot of noise, a lot of loud and vulgar talk, and some glass breaking down the street from the police station. He left the station and approached the crowd. He asked them to disperse, and to hold the noise down. They would not disperse and each time he would attempt to leave they would start yelling and cursing again. Finally Officer Toney advised the crowd that if they wouldn’t move on and hold the noise down that he was going to have to just lock them up. As to defendant A. B. Thompson, Jr.’s conduct, Toney testified:
“[A]nd A. B. Thompson, Jr., he got real tough, you know, he ain’t nobody going to carry him nowhere, and he cursed, he would do as he damn pleased. Well, I went in then to arrest A. B. for disturbing the peace and when I started to get A. B. the whole group surrounded me and that’s when I. pulled my gun and backed up to the car and went and got some more help, Arthur Caston and Leroy Smith.”
Toney recognized Leon Thompson and Davis Stewart, and described what they were doing:
“A. Well, they was talking in a loud tone of voice, in other words, just agitating everybody else, especially Stewart.
“Q. What, if anything, do you recall Stewart saying?
“A. Well, these white mother, you know, so and so, they just want to run over us just because we are black, you know, we don’t have to do what they want us to do. He said, all you brothers, you know, stick together, we going to straighten this place out.”
Officer Toney withdrew from the crowd and picked up Arthur Caston, a 60-year old black policeman who had been on the force since 1966, and notified Leroy Smith, a 50-year old white policeman, to join them.
Caston testified that when he asked the crowd what was going on nobody would answer, but that the second time he asked Davis Stewart what was going on that Stewart cursed him, denied that there was any disturbance and stated that they were “trying to run over us because we are black.” Caston testified that A. B. Thompson, Jr. then joined in and uttered a vile obscenity toward them, and said: “[W]e going to get you, he said, somebody going to pay for it tonight.”
Caston further stated that Officer Toney then told Thompson that he was under arrest but that when Toney came around and put his hand on Thompson that Thompson “lunged at him, and he went for him.” Toney attempted to use his nightstick to protect himself, but Leon Thompson grabbed the stick and took it away from Toney. As Toney was going down he managed to pull his pistol from the holster and shot A. B. Thompson in the leg. Caston testified about the crowd: “Well, they was all around us. They was right at us.”
Toney hollered for help as he was pushed down by the side of the car by A. B. Thompson, Jr. and Policeman Smith grabbed the nightstick away from Leon Thompson as he brandished it over Toney and struck A. B. Thompson, Jr. with it to get him off of Officer Toney. Both Caston and Smith testified that Stewart, during this time, was cursing and using vile and vulgar language and riling up the crowd.
Leon Thompson took his brother, A. B. Thompson, Jr. to the hospital. The crowd grew larger and larger and was in a very ugly mood. Officer Toney, who had injured his back when knocked or pushed down by A. B. Thompson, Jr., was helped *643 into the patrol car and immediately called for additional help to deal with the crowd. The mayor of Gloster and the sheriff and his deputy from Centreville arrived on the scene, and after the mayor talked to the crowd for some time the crowd was persuaded to disperse and move on.
Mrs. Lizzie N. Jackson, a black business woman, testified that she heard loud noises coming from in front of her business establishment; that she investigated and found that it was a group of boys cursing the policemen; and the policemen were doing nothing, just listening to the crowd; that the crowd was very angry and she was frightened.
Joe Jackson, a 60-year old black man, testified that he was just back from California, that he had never seen such a situation in Gloster in all of his life; that it was a big riot but “just didn’t get started good.” The trial court was correct in refusing to direct a verdict for the defendants. It was a question for the jury to decide and there was ample evidence to support the jury verdict against all three defendants.
Appellants contend that the riot statutes were void because of vagueness and the overbroad language of the statute.
Section 2361.5-01, subd. A, Mississippi Code 1942 Annotated (Supp.1972), defines “riot”;
“A. A ‘riot’ is any use of force or violence disturbing the public peace, or any threat to use such force and violence, if accompanied by immediate power of execution, by two (2) or more persons acting together and without authority of law.”
Section 2361.5-02, Mississippi Code 1942 Annotated (Supp.1972), sets forth the penalty :
“Any person participating in a riot as herein defined shall be guilty of a felony and, upon conviction, such person shall be fined not more than One Thousand Dollars ($1,000.00), or confined in the penitentiary for not more than five (5) years or both.”
The Federal Riot Control Statute, Section 2102, Title 18, United States Code Annotated, is very similar to Mississippi’s statutes. It provides :
“(a) As used in this chapter, the term ‘riot’ means a public disturbance involving (1) an act or acts of violence by one or more persons part of an assemblage of three or more persons, which act or acts shall constitute a clear and present danger of, or shall result in, damage or injury to the property of any other person or to the person of any other individual or (2) a threat or threats of the commission of an act or acts of violence by one or more persons part of an assemblage of three or more persons having, individually or collectively, the ability of immediate execution of such threat or threats, where the performance of the threatened act or acts of violence would constitute a clear and present danger of, or would result in, damage or injury to the property of any other person or to the person of any other individual.”
Section 2087.5, Mississippi Code 1942 Annotated (Supp.1972), defines disorderly conduct which may lead to a breach of the peace:
“1. Whoever with intent to provoke a breach of the peace, or under circumstances such that a breach of the peace may be occasioned thereby:
“(1) crowds or congregates with others in or upon ... a public street or public highway, or upon a public sidewalk, . . . and who fails or refuses to disperse and move on, or disperse or move on, when ordered so to do by any law enforcement officer of any municipality, or county, in which such act or acts are committed, or by any law enforcement officer of the State of Mississippi, or any other authorized person,

*644 shall be guilty of disorderly conduct, . . and such conduct shall lead to a breach of the peace or incite a riot in any of the places herein named, and as a result of said breach of the peace or riot another person or persons shall be maimed, killed or injured, then the person guilty of such disorderly conduct as defined herein shall be guilty of a felony, and upon conviction such person shall be imprisoned in the Penitentiary not longer than ten (10) years.”
In Thomas v. State, 252 Miss. 527, 160 So.2d 657 (1964), after discussing Section 2087.5, supra, in great detail, this Court concluded its opinion by ruling:
“After careful analysis of § 2087.5, Miss.Code 1942, Rec., we conclude that it is not vague and indefinite, and does not deny appellant in this respect due process of law under the Fourteenth Amendment to the Constitution of the United States. The act points out in specific terms the elements of the offense and the constituent elements of it. See Amsterdam, The Void for Vagueness Doctrine, 109 U. of Pa.L.Rev. 67 (1960), reprinted in Selected Essays on Constitutional Law, pp. 560-599 (1963).” 252 Miss, at 556, 160 So.2d at 670.
In McLaurin v. City of Greenville, 187 So.2d 854 (Miss.1966), the objection of vagueness and indefiniteness was made to Section 2089.5, Mississippi Code 1942 Annotated (Supp.1972), which statute is very similar to Section 2361.5-01, subd. A. In construing this statute, this Court said:
“The statute as drawn is in broad terms, but it is not unconstitutional upon its face. . . .

“The language of Cantwell v. State of Connecticut (1940), 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213, is appropriate here. ‘The offense known as breach of the peace embraces a great variety of conduct destroying or menacing public order and tranquility. It includes not only violent acts but acts and words likely to produce violence in others. No one would have the hardihood to suggest that the principle of freedom of speech sanctions incitement to riot or that religious liberty connotes the privilege to exhort others to physical attack upon those belonging to another sect. When clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears, the power of the State to prevent or punish is obvious.’ 310 U.S. at page 308, 60 S.Ct. at page 905. (340 U.S. at 320, 71 S.Ct. at 306, 95 L.Ed. at 300).” 187 So.2d at 860.
In the recent case of Chinn v. Johnson, 294 F.Supp. 909 (USDC Miss.1969), the three judge panel, in ruling on Section 2087.5, as construed by the Supreme Court of Mississippi, ended up by saying: “Therefore, the statute is neither unconstitutional per se nor as construed.” 294 F.Supp. 912.
We think the language of Section 2361.5-01, subd. A sufficiently informed the defendants of the essential elements of the offense.
Surely A. B. Thompson, Jr. knew that it was a crime to assault a police officer while engaged in the lawful performance of his duties in attempting to quell a riot that had been instigated and encouraged by this appellant’s cursing and using obscene language to excite the crowd.
We are not in doubt that Leon Thompson knew that it was against the law to forcibly take a nightstick from a police officer and to brandish it over the officer while he was engaged in the lawful performance of his duties in attempting to quell a riot, that had also been encouraged by Leon Thompson’s vile and obscene language.
Davis Stewart, acting in concert with the Thompson brothers, knew that his loud, profane and threatening language would incite the large crowd to riot, and this was the effect that he (Stewart) intended to *645 have on the crowd, and this was the effect that he did have on the crowd.
The verdict of the jury against each defendant is amply supported by the evidence. The Town of Gloster was extremely lucky that this riot was nipped in the bud and did not get completely out of hand. The Town was lucky that nobody was killed or seriously hurt.
The judgment of the circuit court against each defendant is affirmed.
Affirmed.
RODGERS, P. J., and JONES, INZER and BROOM, JJ., concur.